*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. A. X. REED-MOORE, Minor.

UNPUBLISHED
March 09, 2026
12:30 PM

No. 372641
Wayne Circuit Court
Family Division
LC No. 2012-504805-NA

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to his son, MRM, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We affirm the order of termination.

## I. FACTS

Respondent has five children with nonrespondent mother: MTM1, MTM2, VRM, VMR, and MRM. Respondent's parental rights were previously terminated to MTM1, MTM2, and VRM because of severe physical abuse by respondent. See *In re Moore/Reed*, unpublished per curiam opinion of the Court of Appeals, issued June 12, 2014 (Docket Nos. 318955 and 318970), pp 3-4 (affirming termination of respondent's rights to VRM in part due to respondent's parental rights to MTM1 and MTM2 having been previously terminated due to physical abuse). After these events, respondent and mother lived in Kentucky for a period of time, including when MRM was born. A Children's Protective Services investigation of respondent and mother was conducted in Kentucky because of allegations of domestic violence. Later the family returned to Michigan.

In 2021, mother placed six-month-old VMR on her bed with a bottle propped up on a blanket. Mother left him alone for 5 to 10 minutes and when she came back, VMR had died. It was later ruled an accidental death. Respondent was not living with the children's mother at that time. Petitioner, the Department of Health and Human Services (DHHS), filed a petition for the removal of MRM from mother and respondent's care in June 2021. MRM was placed with the person who had adopted one of his sisters. MRM had speech delays and it was suspected that he had autism.

-1-

As part of the removal proceedings, petitioner sought termination of respondent's parental rights at the initial disposition. At the conclusion of the initial adjudication trial in October 2021, the trial court did not agree. A parent-agency agreement was made for respondent, which required a psychological evaluation; respondent's compliance with any recommendations from the evaluation; individual therapy; parenting classes; attending all hearings, parenting times, and MRM's medical appointments; maintaining housing and employment; and communicating with DHHS. Respondent initially complied with his parent-agency agreement. However, concerns were raised in 2023 when respondent got into a car accident while intoxicated and later pleaded guilty to a charge of operating while intoxicated. DHHS received complaints that respondent attended his parenting times smelling of alcohol and marijuana. On one occasion in September 2023, MRM had a black eye and a contusion on the back of his head after an unsupervised parenting time with respondent. MRM also began to act out at school and said that respondent had told him to hit people.

In the aftermath of these developments, petitioner filed a supplemental petition once again seeking termination of respondent's parental rights. At the hearing—which was conducted using videoconferencing technology—DHHS representatives testified that respondent had missed 22 of 68 parenting time opportunities and appeared intoxicated at two of the opportunities he did attend, had not benefited from parenting classes, and did not seem able to meet MRM's needs.

At the close of proofs, the trial court said that it wanted to review its notes and would resume proceedings after a 10-minute recess, at which time it would provide its reasoning on the record. But the transcript ends at that point, without the trial court ever going back on the record to explain its reasoning. The court later entered an order terminating respondent's rights to MRM. In the order terminating respondent's parental rights, the trial court stated that termination was appropriate for the reasons stated on the record. After respondent appealed, petitioner filed a motion in this Court to remand the matter to the trial court to settle the record. That motion was granted, and on remand, the trial court entered an order settling the record, which included the statutory grounds for termination and best-interest findings. In our remand order, we also provided that respondent could file a supplemental brief within 21 days responding to the trial court's decision. Respondent's counsel filed a brief after that deadline, which this Court rejected as untimely. Respondent's counsel subsequently filed a motion asking this Court to accept an untimely brief, which we granted.

## II. REASONING ON THE RECORD

Respondent first argues that the trial court clearly erred by failing to state its reasoning on the record. We disagree because, as just noted, the trial court has since provided such reasoning in an order settling the record. Despite filing a supplemental brief after the order settling the record was entered, respondent has again claimed error related to the trial court's failure to state its reasoning and findings on the record.[1] This claim is now factually inaccurate, and, in light of the

---

[1] The brief filed by respondent's counsel in connection with the motion to accept an untimely brief appears to be identical to the initial brief on appeal. This is a likely oversight, because the brief rejected as untimely shifts focus and argues that the trial court erred by finding statutory grounds

events occurring on remand, moot. See *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 580; 957 NW2d 731 (2020). Consequently, we decline to consider it further.

## III. BEST INTERESTS

Respondent additionally argues that termination of his parental rights was not in MRM's best interests. We disagree. A trial court's findings regarding a child's best interests are reviewed for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Factual findings are clearly erroneous when this Court has a definite and firm conviction that a mistake was made. *Id.* at 709-710.

Once a statutory ground for termination has been found, a parent's interest in making decisions regarding the care and custody of their child is superseded by the state's interest in protecting the welfare of the child. *In re Deng*, 314 Mich App 615, 623; 887 NW2d 445 (2016). A best-interest analysis should focus on the child, not the respondent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). When determining if termination is in a child's best interests, the trial court may consider the bond between the child and the respondent, the respondent's parenting ability, the child's need for stability and permanency, and the advantages of the child's current placement. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The trial court may also consider any history of domestic violence, the respondent's compliance with their parent-agency plan, the respondent's visitation history with the child, the child's well-being in their current placement, and the potential for adoption. *White*, 303 Mich App at 714. A child's placement with relatives weighs against the termination of a respondent's parental rights. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010).

Respondent and MRM had a bond, but it did not seem to be that of a parent and child. Respondent's parenting ability was questionable. He had taken MRM from supervised visits without DHHS's permission, which does not show good decision-making skills or a regard for MRM's safety. Respondent struggled to meet MRM's needs, such as providing appropriate food. Because of MRM's special needs, respondent would likely need to spend more time and effort to meet MRM's needs. Respondent did not appear willing to do this. Though he stated he thought he would be able to meet MRM's needs, he did not demonstrate an ability to do so throughout the case and also claimed that he was unaware of MRM's special needs.

---

to terminate respondent's parental rights to MRM. Even if properly presented, we would not grant relief on this argument. The trial court's observation that "after almost 26 months, [respondent] is still not in compliance with his treatment plan, [and] was convicted of an OWI and license offense" is essentially conceded by respondent, who does not deny these facts and instead argues that "the trial court did not appropriately weigh" various facts he believes are in his favor. But the facts at minimum support a finding that "[t]here is a reasonable likelihood . . . that the child will be harmed if the child is returned to the home of the parent," MCL 712A.19b(3)(j), meaning there is nothing to "weigh"—the trial court did not clearly err in concluding that petitioner has proven a statutory basis for termination.

MRM needed stability and permanency because he was approximately seven years old and spent over half of his life involved in termination proceedings. Though MRM had been placed with a foster parent for most of this time, the potential of returning to respondent's care created a risk of instability. MRM's current placement allowed him to be with one of his sisters. Placement with respondent would not allow for this because of respondent's previously terminated parental rights. MRM could not be placed with all of his siblings because they were not all placed together, but placement with one sibling would allow MRM to remain connected with some family.

There were claims of domestic violence between respondent and MRM's mother that led to a personal protection order being issued against respondent. Though an allegation of abuse was not made, MRM did return from respondent's parenting time with a black eye and a contusion to the back of his head. Respondent allegedly encouraged MRM to use violence to solve problems. Though the previous terminations happened over 10 years ago, respondent's behavior still presents a worrying risk to MRM's safety if he were placed in respondent's care because it is not clear that respondent saw an issue with using violence. Respondent had taken parenting classes but had not seemed to benefit from them. Additionally, he missed approximately one-third of his parenting times with MRM. This indicates that respondent would not be able to provide a safe and stable home for MRM because he did not consistently show up for MRM or put sufficient effort into learning how to be a better parent. Respondent pleaded guilty to operating while intoxicated and seemed to be intoxicated while caring for MRM. He had tested positive for alcohol while on probation. Though respondent claimed that being reunified with MRM was more important to him than alcohol, this did not align with his behavior. Respondent drove while intoxicated at least once, again potentially placing MRM at risk if he were to be in respondent's care.

MRM was doing well in his placement and was receiving services for his special needs. MRM's placement indicated she was willing to adopt MRM, which would provide stability and a home with his sister. MRM's placement is considered a relative because she adopted MRM's sister. MCL 712A.13a(1)(j)(*i*). MRM's placement with her therefore weighed against the termination of respondent's parental rights, which the trial court appropriately considered. *Mason*, 486 Mich at 164. However, the trial court acknowledged this and still found that termination was in MRM's best interests. In light of respondent's history of violence, inconsistent engagement with his parent-agency agreement, and alcohol use, we conclude the trial court did not clearly err in finding that termination of respondent's parental rights was in MRM's best interests.

Affirmed.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman